**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| SOGUEY ARACELY ARIZA LOPEZ | CIVIL NO. 22-1053 |
| VERSUS | JUDGE MAURICE HICKS, JR. |
| KELLY CHRISTOPHER ASH | MAGISTRATE JUDGE MCCLUSKY |

**ORDER**

Before the Court is Petitioner Soquey Aracely Ariza Lopez's ("Lopez") Ex Parte Motion under the Hague Convention for a Temporary Restraining Order and Scheduling an Expedited Hearing (Record Document 4). After consideration of the Motion and arguments made therein, the Court **GRANTS** the Motion.

**BACKGROUND[1]**

Lopez seeks the return of her nine-year-old son, "MCCA," whos she alleges was "abducted…from Honduras without [her] knowledge or permission" on November 9, 2021, by the Respondent, Kelly Christopher Ash ("Ash"). Record Document 1 at ¶18. Lopez is the child's biological mother and has primary custody and care of the child "[f]rom the time of [his] birth to the time of his wrongful removal from Honduras" by the child's biological father, Ash. See id. at ¶11. Lopez and Ash were never married but lived together from "early 2012 through March of 2016," at which time Ash left Honduras. See id. at ¶9.

After Ash left Honduras in 2016, he visited MCAA in once September 2017, December 2018, September 2019, and November 2021. On November 8, 2021, Ash and Lopez reached an out-of-court agreement pertaining to the custody of and communication with MCAA. The agreement, made in the presence of their attorneys, awarded

---

[1] Because Ash has not yet appeared, this summary of the background is drawn solely from Lopez's pleadings.

1

guardianship and care of MCAA to Lopez and required Lopez's "consent and permission for [Ash] to leave Honduras with the Child." See id. at ¶15. The agreement also permitted Ash to travel to Tegucigalpa, Honduras with MCAA on November 9, 2021, to renew MCAA's passport at the American Embassy, but explicitly prohibited Ash from removing MCAA from the country without Lopez's authorization. See id. at ¶16. Ash agreed to return MCAA to Lopez on November 11, 2021.

On November 9, 2021, Lopez alleges Ash abducted MCAA from Honduras without her permission or authorization. See id. at ¶18. On November 11, 2021, Lopez confirmed through the immigration office located in the Tegucigalpa airport that MCAA had been taken out of the country. See id. at ¶20. On November 15, 2021, Lopez filed a complaint with the Public Prosecutor's office and then immediately contacted the Honduran Federal Police and reported MCAA's absence. See id. at ¶21-22. Lopez received a document she purportedly signed from the immigration office which was presented by Ash when he removed MCAA from the country. The document fraudulently authorized MCAA to leave Honduras. See id. at ¶23. On November 17, 2021, Lopez filed a complaint with the Honduran Prosecutor's office alleging that Ash falsified documents. See id. at ¶24. Lopez filed an application for the return of MCAA with the Honduran Central Authority on November 17, 2021. See id. at ¶25. After receiving Lopez's application, on January 31, 2022, the United States Department of State notified Ash via letter of the application and attempted to seek his assistance in returning MCAA to Lopez. See id. at ¶27. Ash responded stating he was not willing to voluntarily return MCAA to Honduras and presented to the State Department yet another document with Lopez's falsified signature. See id. at ¶28.

Lopez filed the instant suit under the Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), T.I.A.S. No. 11,670, 1343 U.N.T.S. 98, reprinted in 51 Fed. Reg. 10,494 (Mar. 26, 1986), and implemented by Congress through the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.* ("ICARA"). She argues that Ash "wrongfully removed the Child within the meaning of Article 3 of the Convention and continues to wrongfully retain the Child in the State of Louisiana, United States, in violation of Article 3 and despite [her] efforts to have the Child returned to Honduras." Record Document 1 at ¶33. She claims she has never consented to the removal of MCAA from Honduras to the United States which supports a finding that Ash is in violation of Article 3. See id.

In her present Motion, Lopez requests relief from this Court in the form of:

1. An immediate temporary restraining order prohibiting the removal of the Child from the jurisdiction of this Court pending a hearing on the merits of this Verified Complaint, and further providing that no person acting in concert or participating with Respondent shall take any action to remove the Child from the jurisdiction of this Court pending a determination on the merits of the Verified Petition;

2. The issuance of an immediate Order that all of MCAA's travel documents, including but not limited to the child's passport or identification card and birth certificate, be surrendered to this Court;

3. The scheduling of an expedited preliminary injunction hearing on the merits of the verified Complaint; and order that Respondent show cause at this hearing why the Child should not be returned to Honduras by Petitioner and

3

why such other relief requested in the verified Complaint should not be granted; and pursuant to federal Rule of Civil Procedure 65, and order that the trial of the action on the merits be advanced and consolidated with the hearing on the verified Complaint; and

4. any such further relief as may be just and appropriate under the circumstances of this case.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) states that a court may only issue a TRO without notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. Rule Civ. P. 65(b)(1)(A)-(B). Additionally, a party seeking a TRO "generally must show (1) a substantial likelihood of success on the merits, (2) irreparable injury if the injunction is not granted, (3) that the injury outweighs any harm to the other party, and (4) that granting the injunction will not disserve the public interest." Brock Servs., L.L.C. v. Rogillio, 936 F.3d 290, 296 (5th Cir. 2019). Generally, ex parte TROs are "restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty., 415 U.S. 423, 439 (1974).

Procedurally, when a party also requests a preliminary injunction, Federal Rule of Civil Procedure 65(a) allows the Court to consolidate a hearing on a motion for a

preliminary injunction with a trial on the merits of the complaint. Rule 65(c) allows the Court to "issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, included in the Court's discretion when setting a security bond is the ability to "require no security at all." A.T.N. Indus., Inc. v. Gross, 632 F. App'x 185, 192 (5th Cir. 2015) (quoting Kaepa, Inc. v. Achilles Corp., 76 F.3d 624, 628 (5th Cir. 1996)).

## ANALYSIS

Lopez seeks a TRO prohibiting Ash from removing MCAA from the jurisdiction of this Court, the Western District of Louisiana, and also moves to protect her rights under the Hague Convention and ICARA. She argues "injunctive relief is necessary to prevent irreparable harm to [her] and to preserve the status quo." Record Document 4. She contends that "[u]nder 22 U.S.C. § 9004(a), a district court is empowered to take appropriate measures to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." Id. (internal quotations omitted). With her Motion she attaches a certification by counsel that certifies why notice should not be required. See Record Document 4-1. The Court analyzes each substantive factor in turn.

- Likelihood of Success on the Merits

Lopez argues that in accordance with the Hague Convention, removal of a child is wrongful when the removal is in breach of established custody rights "defined by the law of the country in which the child was habitually [a] resident immediately before the removal or retention, and where, at the time of the removal, these custodial rights were

5

exercised…or would have been so exercised but for the removal." Record Document 4 at 6 citing Art. 3, October 25, 1980, October 25, 1980, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98. She contends that pursuant to the law of Honduras, the country of MCAA's habitual residence, she has custodial rights.

The Fifth Circuit Court of Appeals has determined that the test for "habitual residence" "begins with the parents' shared intent or settled purpose regarding their child's residence." Larbie v. Larbie, 690 F.3d 295, 310 (5th Cir. 2012). The test requires the Court to assess whether both parents intended for the child to "abandon the [habitual residence] left behind." Id. at 310-11 (citation omitted). There must be a meeting of the minds between parents regarding the child's habitual residence. See Berezowsky v. Ojeda, 765 F.3d 456, 468 (5th Cir. 2014).

Prior to the removal of MCAA from Honduras, Lopez and Ash, in the presence of their attorneys, agreed for MCAA to remain in Honduras under the guardianship and care of Lopez. See Record Document 1 at ¶36. Ash was permitted to seek authorization from Lopez to travel with MCAA, but Ash was prohibited from removing MCAA outside the country without prior approval. See id. It appears to the Court that the two reached an understanding that the child would reside in Honduras with his mother, and indeed such was the case when Ash came to visit the child in 2017, 2018, 2019, and 2021. Furthermore, there is no question that Lopez was exercising her custodial rights over MCAA at the time he was removed by Ash. The child was under the care and keeping of Lopez pursuant to the couple's agreement and she financially supported him.

From the information presented to the Court, it finds a strong likelihood for success on the merits of Lopez's claim under the Hague Convention.

- Irreparable Injury

The Court also believes there is risk of irreparable injury in failing to grant Lopez the relief requested. From the facts presented, Ash has previously refused to voluntarily surrender the child and has threatened to "secret away" the child should he be sought by the proper authorities. Record Document 4-1. Based on Ash's actions in removing the child from Honduras, there is a strong likelihood of further movement of the child absent Court interference. ICARA, 22 U.S.C § 9004(a), provides that a court may take appropriate measures "to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition."

Given the ability of Ash to mobilize and his prior impediments in the efforts to locate the child, the Court finds that irreparable injury is imminent without the Court's relief.

- Injury to the Other Party

The Court agrees with Lopez that any injury which may affect Ash is greatly outweighed by the potential of Lopez losing her child. Lopez represents that she does not seek to alter the present custody agreement in which Ash is permitted to see the child, but instead, merely seeks a maintenance of the status quo. It appears to the Court that Ash will not be injured should it impose a TRO.

- Public Interest

Lastly, Lopez contends that an injunction, if issued would not be adverse to the public interest. She maintains that there is no public interest objection to the relief she requests because her petition and Motion are in compliance with and in furtherance of the Hague Convention and ICARA and the policy goals set forth therein. The Court agrees that a granting of the TRO is in consonant with international, federal, and state law.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Lopez's Ex Parte Motion under the Hague Convention for a Temporary Restraining Order and Scheduling an Expedited Hearing (Record Document 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that:

- Kelly Christopher Ash is prohibited from removing child, MCAA, from the jurisdiction of this Court encompassing the Western District of Louisiana pending a hearing on the merits of the Verified Complaint.

- No person acting in concert or participating with Kelly Ash shall take any action to remove the Child, MCAA, from the jurisdiction of this Court pending a determination on the merits of the Verified Petition

- Within **seven (7) days** of being served with this order, Kelly Ash must surrender all of MCAA's travel travel documents, including but not limited to the child's passport or identification card and birth certificate, be surrendered to this Court.

- The Court will conduct a hearing on this matter, to be scheduled in a separate order. At the hearing, Ash must appear, with the child, MCAA, and show cause why this temporary restraining order should not be extended, as well as why MCAA should not be returned to Honduras and why the Child has been kept from his mother in contravention of Honduran Law.The Court will consolidate a trial of the case on the merits with the hearing of application for preliminary injunction. See Fed. R. Civ. P. 65(a); John v.

<u>State of La. (Bd. of Trustees for State Colleges & Universities)</u>, 757 F.2d 698, 704 (5th Cir. 1985).

- In the same separate order, the Court will also institute a briefing schedule setting dates by which Ash may respond to Lopez's pleadings and Lopez may reply.

- Lopez shall be allowed access to the child, to include in-person visits when possible as well as regular FaceTime or Skype and telephone contact.

- The United States Marshal's Service shall serve Ash with this Order, Lopez's Complaint, and all other documents no later that 5:00pm on Monday, April 25, 2022.

- Unless extended by the Court, this Order expires on May 6, 2022, at 5:00 p.m.

- No security bond is required.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 22nd day of April, 2022.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT